BARRY, appellant, v. BOYLE *et al.*

*Will — probate of.*

There was a conflict in testimony as to the genuineness of the signature to a
will. It appeared that the testatrix was sick at the time of executing the
will, and had not read it. It was drawn by a person who had no written
instructions from the testatrix as to her intent, and the wife of such person
received under the will a contingent interest in the entire estate, and the
will was an unnatural one. *Held*, that the surrogate properly refused to
admit such will to probate.

APPEAL from the decree of the surrogate of Kings county
refusing probate to a will alleged to be that of Catherine E. Boyle,
deceased. The facts sufficiently appear in the opinion.

*F. G. McDonald,* for appellant.

*Frederick A. Ward,* for respondent.

BARNARD, P. J. The evidence fails to convince me that the
paper proposed for probate is the last will and testament of the
deceased Mrs. Boyle. As to the formal execution of the paper, there
is conflicting testimony . Two witnesses, Wm. H. Barry and Jones
Lovin, testify that they saw it executed by deceased. Mrs. Barry
testifies that she saw it signed by deceased. The witnesses, Thomas
F. Boyle and Bridget McClosky, testify to facts showing it impossi-
ble that deceased could have signed the will at the time it is alleged
to have been signed. One expert testifies that the signature of
deceased to alleged will is genuine. Two testify that it is not
genuine. There is evidence tending to corroborate both proponent
and contestant.

The surrogate is left in doubt as to the signature, and rejects the
will. I concur with him upon this ground, and also upon the
ground that, assuming the formal execution of the will, it ought
not to be proved as a will of the deceased. It was not read to her.
It was not read by her. She said she would read it afterward, and
handed it back to Barry. She was a very sick person at the time
of the alleged signing, and died in five or six days thereafter. Wm.
H. Barry drew the will, and his wife gets under it a contingent

interest in the entire estate. The will is taken by Wm. H. Barry imme-
diately upon its execution, and secreted in a bureau drawer, where it
remains from Wednesday night to Friday, when it is taken away by
Mrs. Barry, and kept until after the death of Mrs. Boyle.  Deceased
could not have read the will after its execution.  No written
instructions were given as to the manner this will was to be drawn
by deceased to Barry.

It was to be like another will which he had drawn for her, he
says, except the power of sale was to be left out and an executor
changed.

No one has seen this former will except Barry.  He was told
"she," deceased, "had burned it up."  Who told him?  Who wit-
nessed this first will besides Barry?  The copy of the first will,
which was of vital importance, is not produced by Barry until over
five months after he had been examined as to the execution of the
proposed will.

The draft of the first will is drawn by Barry.  Where is the
executed copy?  It was not destroyed at the execution of the will
in question.  It is very unlikely that a woman, sick as deceased was,
destroyed it after the alleged execution of the proposed will.  The
will is an unnatural one, in that the children of deceased children,
if any, should be born before their parents should be twenty-one
years of age, are unprovided for, if such parents die before arriving
at age.

Upon the whole facts of the case, I think the decree of the surro-
gate should be affirmed with costs.

*Decree affirmed.*